## Anderson C. Mitchell *v.* George W. Sherman.

A party who comes into a court of chancery to rescind a contract, upon the ground of the defendant's inability to comply with his part of the contract, must put his adversary in the wrong. In other words, the complainant must show that he has himself done and performed, on his part, whatever, by the terms of the contract, he is required to do, in order to authorise him to demand a compliance at the hands of the defendant.

Complainant purchased land of respondent, and the latter gave the former a bond for title when the purchase money should be paid, Before all of the purchase money was paid, complainant ascertained that respondent had no title, or a defective title, Without offering to pay the balance of the purchase money, or demanding a title, complainant filed a bill to enjoin the collection of the balance of the purchase money: Held by the court, that the allegations of the bill were not sufficient to warrant an injunction. If the complainant had made a tender of the purchase money and demanded his deed, and the defendant had refused or was unable to convey a good title, the court would enjoin the collection of the purchase money until the sufficiency of the defendant's title could be investigated, and grant relief accordingly.

The bill in substance charges that the complainant purchased of respondent two hundred and fifty acres of land, part of section sixteen, township five, range three, west, for three thousand dollars, of which four hundred dollars were paid in hand, and made his notes to respondent for the residue, to wit: one for six hundred dollars, due 25th December, 1837; one for a thousand dollars, due 25th December, 1838; and one for a thousand dollars, due 25th December, 1839; and that respondent made his bond for good and sufficient title thereto, so soon as the *entire and full amount* of the purchase money should be paid, which contract is evidenced by respondent's bond for title, filed and marked A; part of the bill charges the payment of the note of six hundred dollars, and the payment of four hundred and thirty-nine dollars on the note of a thousand dollars due 25th December, 1838, and charges that suit is instituted for the recovery of the residue of said note.

The bill further charges that said two hundred and fifty acres of land, mentioned in said bond, is part of section sixteen, which

is one of three sections of land located for Beckey Locklier, No. 585, Secaly District of the Chickasaw tribe, as her reserve under the treaty; that said Beckey Locklier died, and one Eli Locklier, a negro, who called and represented himself as husband of said Beckey, executed his deed, purporting to convey said section, together with sections 21 and 22, of which said two hundred and fifty acres are part, to Wilson T. Caruthers and Richard Bolton, by deed dated 27th May, 1836, of which a copy is filed and marked B; and that said Caruthers and Bolton conveyed said section sixteen to David Hubbard, in June, 1836, by deed with special warranty, a copy of which is filed and marked C; and that said Hubbard conveyed said land to Jno. Delafield and others, trustees of the New York and Mississippi Land Company, by deed of date 3d January, 1837—a copy of said deed is filed and marked D.

The bill further charges that said respondent represented that he had good right and title to said land; was fully authorized to sell the same, and make title thereto; and, since the purchase, complainant charges that he has discovered that said Delafield and others have not conveyed to respondent, and that he pretends to hold their title bond, which is not of record; and that respondent has not paid for the lands.

Complainant further charges that said Beckey Locklier, at the time of her death, left five children, three by said Locklier and two by her former husband, an Indian of said tribe, living at her death, and that said children had gone west of the Mississippi river with the tribe, and that at the death of said Beckey Locklier said lands descended, under the 6th article of the treaty of Dancing Rabbit creek, to the husband and children of said Beckey, and the survivor, in case the husband was an Indian; and, by the 7th article of the treaty, if the husband was a white man, absolutely in the children; and in case the husband was a negro, no title vested in him; that the deed from said Locklier communicated no title to the grantors aforesaid, and that said respondent's title bond is worthless, &c. There is also an indistinct charge of insolvency in the bill.

Respondent, in his answer, admits that complainant bought said land in the bill for the price and upon the terms mentioned in the bill, and refers to his title bond to complainant as containing the

precise terms of the sale; admits the payments made in the bill, the bringing the suit, &c.; and from which it appears that the complainant has no right to ask and demand title till the consideration money is paid; and that there are sixteen or seventeen hundred dollars yet remaining unpaid; that, immediately after said contract, complainant entered upon the land, and has and still does enjoy the same; that there were seventy-five or eighty acres of improved land upon said tract, worth five dollars per acre; that said tract is part of section sixteen, and that it was located for said Beckey as part of her reserve; that said Eli Locklier made the deed to Caruthers and Bolton, marked B in the bill; that said Eli was the husband of Beckey, according to the usages of said tribe; admits said Beckey died before making said deed, leaving said Eli and five children living, two or three of whom she had by her former husband, a native Chickasaw, and who were provided for as orphans under said treaty, and two or three by said Locklier; all of said children have gone west with the tribe; does not admit said Locklier to be a negro, but was a white man, resident in the nation at the time of making the treaty, and who had long before been married to said Beckey; in fact, respondent had either been born in said nation, or had lived so long in said nation as to be adopted as one of the tribe, as he is advised; that said Eli was treated both by the agent and chiefs of the tribe as a white man, in their official capacities, as will appear by their certificate upon exhibit B in the bill, and entitled to said land under the treaty; and insists that the same cannot now be questioned, being already adjudicated by the proper authority under the treaty; admits the conveyance from Bolton and Caruthers to Hubbard, exhibit C in the bill; also admits that Hubbard conveyed to Delafield and others, trustees, &c. exhibit D in the bill, and from whom respondent purchased and took title bond, exhibit No. 1 in the answer, and which forms part of respondent's title, and from which it appears that respondent is entitled to a title on payment of the purchase money. The power of attorney from said trustees to Hubbard and Bolton is filed, exhibit No. 2, and authorizes the sale; that $3,200 was the money agreed to be given for the section to said company, $600 of which paid down and respondent's notes for the residue—one for $200, and two for $1200 each—which are un-

paid. Respondent says he told complainant that he held the title bond of said company for said section, and that he owed the company therefor $2,600, and that no title to said land could be had till the money was paid; and that respondent's object in selling said land, in part, was to get money to pay the same; and that complainant purchased with full knowledge of those facts; denies making any other representation on the subject; he denies insolvency, present or prospective; that Eli Locklier is still alive, and lives with the tribe west of the river; insists that he will be able to make title so soon as complainant shall entitle himself to it.

J. W. CHALMERS for complainant.

The questions arising upon this bill and answer are two.

1st. Did the deed of Eli Locklier communicate any title? and if it did—then

2nd. Is defendant in such a situation as to authorize the collection of the money due for the land?

Upon the first point plaintiff contends that by the 7th article of the treaty, the husband of Beckey Locklier, Eli, being a white man, at her death the lands reserved to her by said treaty descended and vested in her five children, and that by law; and so far from the action of the commissioners and agents at Pontetoc being fixed and conclusive, that when so vested by operation of law, they were excluded or concluded from the exercise of any authority over it. "*They had no jurisdiction*," and all their acts in the premises were not only voidable, but absolutely void. The distinction between this and the case of Anderson and Orne *v.* Lewis and Niles, so elaborately argued at this term, is simple and striking: In that case the located Indian sold her land, and it was approved; in this case the located Indian died, and *her land vested by operation of law in her children; they never sold, and were approved.* But a *white man* sold their lands vested in them by treaty, *and this act was approved.* Had the commissioners power to approve of sales of Indian lands made by *white men?* If they had in one, they had in all cases, to the extent of parcelling out the country to the whites, to the entire exclusion of the Indians, to whom it belonged, and whose sales alone they were authorized to approve. Take it for granted, that the act of the commissioners is final and

conclusive in the sense contended for to-day, which is confined to the jurisdiction given under the treaty; it is not less void if they go beyond their powers. See Treaty, Art. 7, p. 8.

If I am correct in the foregoing, there is an end of this case, and defendant has no pretence for enforcing the collection of the purchase money for the lands; but if in this I am in error, let us see if defendant is,

2nd. In a situation to enforce the payment, which question presents two aspects, whether the said Hubbard and Bolton, who made the title bond, exhibit 1, to defendant, had authority from the owners of the land; and if so, whether said bond *alone* is sufficient to authorize defendant to enforce payment before he obtains title himself.

On the first point here presented, your Honor will observe that David Hubbard by deed, exhibit D of bill, conveys said land to defendant and others, " *Trustees of the New York and Mississippi Land Company*," and that said Hubbard and Bolton, who made Sherman's bond, exhibit 1 of the answer, do so, by virtue of exhibit 2 of the answer, which upon inspection will be found to be a power of attorney to sell and convey the lands of the parties and their wives, "*our lands*," in Mississippi, Tennessee, and Alabama, without mentioning or alluding to the lands held by them as trustees of "*the New York and Mississippi Land Company*," to whom said lands belonged; nor is there any thing in the paper to induce the court so to think, even while it is manifest from the power, that other lands were intended. But if your Honor shall be of opinion that said power of attorney did authorize Hubbard and Bolton to sell said land and execute the title bond to Sherman, the complainant still calls on said defendant to show his title— make it manifest to the court that he *can comply* with his part of the contract, before he enforces compliance on the part of the complainant. Has he done so? He has not; but the exhibits and the answer of defendant show that he not only has no title, but that title is in the children of Beckey Locklier, over whose rights this court can exercise no power, and upon whom defendant has no claims for title.

This court will never enforce contracts specifically, unless both parties do what they agreed to do. Is not the *principle* involved

in this case the same? for although this is not a case for a specific performance, yet the court is asked to dissolve this injunction, that the defendant may make the purchase money for land to which he has not only no title, but can never acquire one by any act on his part, or with the aid of this court. If defendant had contracted for title with the owner, or if Hubbard and Bolton, or the New York and Mississippi Land Company, were the owners, then the case would fall within the principle of mutual independent covenants, and the payment of the purchase money being a condition precedent, its payment must be made or tendered before a title could be required—because that would be but enforcing the contract of the parties, a contract which defendant had a right to make by virtue of his contract with the owners of the land, upon compliance with which, the court could compel them to make him a title. But in this case defendant has no pretence of title,—has sold a pretended title—and no aid of this court or act of his own can place him in a position to comply with his contract with complainant. Is it not manifest then, that by dissolving the injunction, this court places complainant in a position where it is impossible for it to relieve him? This is inequitable, and enables defendant to defraud complainant. For although in answer to the bill, defendant says complainant knew the state of the title, this only means the paper title of defendant; which both parties knew and doubtless considered sufficient for the contract. But the defect chiefly relied upon is the descent of the land to Beckey Locklier's children. Of this complainant was ignorant, and of this he complains, and it is not cured by his knowledge of defendant's paper title, in which both parties had confidence, and upon the strength of which defendant assured and complainant believed title could be made. But until the title is cleared of the right by descent of the heirs of Beckey Locklier, this injunction should not be dissolved. See 6 Call Rep. 368; 6 Pet. 389; 4 Munf. 342; 3 Leigh 161; 3 Munf. 168; 1 Eq. Dig. 134, and cases cited.

TOTTEN and GREER for respondent.

From the bill and answer it is apparent that there is no ground in favor of the bill to support the jurisdiction of the court, but is a case in which complainant has given his notes and has taken

the respondent's bond for title; and if he is not able to make title, is able to answer in damages for failure. There is no fraud alleged or admitted.

As it respects the title to said land, it is needless to discuss the question, as from the state of the pleading, complainant is not in a condition to ask one. In making said contract, complainant relied upon his covenants in the title bond, and has shown no reason which would authorize the court to interfere therewith, and change the legal consequences of that agreement.

The CHANCELLOR.

The complainant's bill states the purchase of a tract of land of the defendant, for which he took the defendant's bond to make a good and sufficient deed to the land, "so soon as the entire and full amount of the purchase money should be paid." He alleges that the defendant has sued and recovered judgment against him for a part of the purchase money, which judgment he has enjoined upon the allegation of the want of title in the defendant, and prays for the rescission of the contract.

A party who comes into a court of chancery to rescind his contract, upon the ground of the defendant's inability to comply with his part of such contract, must put his adversary in the wrong. In other words, the complainant must show that he has done and performed on his part whatever, by the terms of the contract, he is required to do, in order to authorize him to demand a compliance at the hands of the defendant. Without this, it cannot appear to the court but that the defendant, when required to act according to the terms of his contract, may remove all the grounds of complaint. These views are fully sustained in 9 J. R. 126, and 12th, 451.

The payment of the purchase money in this case, by the very terms of the bond, is a condition precedent to the complainant's right to demand a deed from the defendant, and yet there is no allegation in the bill of any offer to pay by the complainant, nor of any demand of a deed. The old maxim, that he who asks equity must do equity, has a pointed application. For any thing that now appears to the court, the defendant may fully comply with his contract, when there is an offer made to pay him his purchase

Anderson G. Mitchell *v.* George W. Sherman.

money. If there are incumbrances on his title, he may, in the mean time, remove them. If there is an outstanding paramount title, he may buy it in. Suppose the complainant's bill was for a specific performance, instead of a rescission, must he not show that he had done every thing on his part to have the contract executed? So in a suit at law upon the bond, it would be incumbent on the plaintiff to aver and prove a payment or an offer to pay the purchase money, before he could maintain his action.

In a case referred to in 3 Monroe's Rep. 171, where a purchaser holding a bond for title filed his bill for rescission, without applying for performance or offering to rescind until after he was sued for the purchase money, the court held that he was not entitled to a rescission. If the complainant here had made a tender of the purchase money, and demanded his deed, and the defendant had refused, or was unable to convey a good title, a very different case would have been made. In such a case the court would enjoin the collection of the purchase money until the sufficiency of the defendant's title could be investigated, and give relief accordingly.

It is unnecessary to express any opinion as to whether the pleadings show the defendant to have a good title or not. The complainant does not show himself entitled to demand a deed, and until then he has no right to institute an inquiry into the defendant's ability to convey.

The injunction must be dissolved.